**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

SOCIAL SECURITY
    ADMINISTRATION,
          Petitioner,

        v.

ARLINE COLON,

          Respondent.

DOCKET NUMBER
CB-7521-19-0009-T-1

DATE: August 30, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Christopher Yarbrough, Esquire, and Sharese M. Reyes, Esquire, Atlanta, Georgia, for the petitioner.

Peter H. Noone, Esquire, Danielle M. Gifford, Esquire, and Lauris Ngai Otieno, Esquire, Belmont, Massachusetts, for the respondent.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1      The respondent has filed a petition for review of the initial decision, which sustained the charge of conduct unbecoming an administrative law judge (ALJ),

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

found that the respondent did not prove any of her affirmative defenses, and concluded that there was good cause to remove her from the ALJ position. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the adjudicating ALJ's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the respondent's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the respondent has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the analysis of the charge, the respondent's disability discrimination claims, and the penalty factors, we AFFIRM the initial decision. The Social Security Administration (SSA) is authorized to remove the respondent from the ALJ position.

## BACKGROUND

¶2　　The following facts, as recited in the initial decision, are generally undisputed. Initial Appeal File (IAF), Tab 166, Initial Decision (ID). The respondent started working at SSA as an Attorney-Advisor in September 2001. ID at 5. The respondent has held the position of an SSA ALJ since July 20, 2008. *Id*.

¶3　　On August 17, 2018, the respondent called 911 and stated that her husband had pointed a gun at her and her son. ID at 5. The police were dispatched to the respondent's residence. ID at 6. The respondent told a deputy police officer that

her husband had pointed a gun at her and her son, and that her husband was a black man, active military, an expert shooter, and dangerous. *Id.* After speaking with the respondent, two deputy police officers searched the husband and determined that he was not armed. *Id.* The respondent's husband told the deputies that the respondent's statements to the 911 operator were not true. *Id.* He explained that he made a video recording with his cell phone of the respondent making the 911 call, and he played the video for the deputies. *Id.* The respondent's husband informed the deputies that he and the respondent had an argument about her drinking before she called 911. *Id.* One of the deputies spoke to the respondent's son, who stated that his father had not pointed a gun at him or the respondent. *Id.* One of the deputies re-interviewed the respondent and advised her of her *Miranda* rights. *Id.* The respondent continued to falsely allege that her husband pointed a gun at her and her son, and she was arrested for reporting false information to a law enforcement officer. *Id.* The respondent was off duty and not on SSA property at the time of this incident. *Id.* Following her arrest, the respondent requested leave to seek medical treatment in September 2018, which SSA granted, and her cases were reassigned while she was on leave. ID at 6-7.

¶4      On November 16, 2018, the respondent attended a *Weingarten* interview,[2] in which she was asked about her August 17, 2018 arrest and her communications with a former ALJ. ID at 8-9. The respondent's union representative also attended this meeting. ID at 9. The respondent declined to answer some of the questions because of the pending criminal case related to her August 17, 2018

---

[2] This is a reference to *National Labor Relations Board v. Weingarten Inc.*, 420 U.S. 251, 267 (1975), which held that an employee has a right to union representation during an investigatory interview when the employee reasonably believes that discipline may result. Although *Weingarten* only applies to private-sector employees, Congress has granted Federal employees *Weingarten*-type rights, as set forth in 5 U.S.C. § 7114(a)(2).

arrest, and she declined to answer some of the questions because they related to private conversations. *Id.*

¶5    On December 2, 2018, the police responded to an automobile accident. ID at 7. After carrying out an investigation, the police determined that the respondent operated her vehicle under the influence of alcohol and left the scene of the accident without stopping. *Id*. The respondent was arrested and charged with driving under the influence and leaving the scene of a crash. *Id.* When questioned by deputies, the respondent initially denied having been driving her vehicle and stated that her friend had been driving. *Id.* Following the arrest, the respondent was placed in a police vehicle, and she yelled and kicked the police vehicle door. *Id.* The respondent was off duty and not on SSA property at the time of this incident. *Id.*

¶6    On or around December 7, 2018, the respondent was informed that she was being placed in a nonduty status pending an investigation into the matters surrounding her recent arrests. *Id.*

¶7    On January 30, 2019, the respondent entered a plea of *nolo contendere* to all three criminal charges (providing false information to a law enforcement officer, driving under the influence with property damage or personal injury, and leaving the scene of a crash with property damage). *Id*. The court withheld adjudication of the charges of providing false information to a law enforcement officer and leaving the scene of a crash with property damage, adjudicated the respondent guilty of driving under the influence with property damage or personal injury, and placed her on a period of probation. ID at 7-8. In February 2020, the court determined that the respondent successfully completed her period of probation and terminated her probation. ID at 8. SSA did not conduct any additional *Weingarten* meetings with the respondent. ID at 9.

¶8    On September 26, 2019, SSA filed a Complaint that sought a finding, pursuant to 5 U.S.C. § 7521, that good cause exists to remove the respondent based on a charge of conduct unbecoming an ALJ (specifications 1-4 related to

the August 2018 arrest and specifications 5-12 related to the December 2018 arrest). ID at 1; IAF, Tab 1. The respondent filed an Answer and asserted several affirmative defenses. ID at 2; IAF, Tab 3. After a 7-day hearing, the adjudicating ALJ issued an initial decision that made the following findings: (1) SSA proved the specifications and charge of conduct unbecoming an ALJ; (2) the respondent did not prove any of her affirmative defenses; (3) good cause exists to discipline the respondent; and (4) SSA demonstrated good cause to remove the respondent from her ALJ position. ID at 2, 9-38; Hearing Transcripts. The respondent has filed a petition for review, SSA has filed a response, and the respondent has filed a reply. Petition for Review (PFR) File, Tabs 9, 12, 15.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶9 An agency may take an action against an ALJ only for "good cause," as determined after a hearing by the Board. 5 U.S.C. § 7521(a). SSA must prove good cause by preponderant evidence. *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 12 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011) *and overruled on other grounds by Department of Health and Human Services v. Jarboe*, 2023 MSPB 22. Congress has not defined the term "good cause" for purposes of section 7521. *Id.*, ¶ 13. The Board, however, has adopted a flexible approach in which good cause is defined according to the individual circumstances of each case. *Department of Labor v. Avery*, 120 M.S.P.R. 150, ¶ 5 (2013), *aff'd sub nom.*, *Berlin v. Department of Labor*, 772 F.3d 890 (Fed. Cir. 2014); *Long*, 113 M.S.P.R. 190, ¶ 13.

SSA proved the charge of conduct unbecoming an ALJ.

¶10 The adjudicating ALJ acknowledged that there were police reports, video and audio recordings, and testimony of law enforcement officers, as well as other evidence, to support the allegations involving the respondent's conduct on August 17, 2018, and December 2, 2018. ID at 9, 11. He noted that the respondent did not dispute the factual allegations surrounding her conduct on

these dates, but she asserted that she had no recollection of the events due to an alcoholic blackout.  ID at 9, 11.

¶11    The adjudicating ALJ defined conduct unbecoming as conduct that violates generally accepted rules of conduct.  ID at 9.  He noted that the American Bar Association (ABA) Model Code of Judicial Conduct is an appropriate guide for evaluating ALJ conduct and that SSA provided the respondent with notice of the Annual Personnel Reminders (APRs), which contain Standards of Conduct for executive branch employees.  ID at 9-10.  He found that SSA proved all of the specifications, and he concluded that the respondent's conduct constituted conduct unbecoming an ALJ.  ID at 10-12.  In his analysis of the respondent's affirmative defenses, he determined that some of the specifications should be merged, and he merged specifications 1 and 2, specifications 3 and 4, specifications 5, 6, and 12, specifications 7 and 11, and specifications 8 and 9.[3] ID at 17, 25-27.  The ALJ also considered and rejected the respondent's argument that her alcohol intoxication during the incidents in question negated her intent, finding, among other things, that a charge of conduct unbecoming did not require proof of specific intent.[4]  ID at 27-28.

¶12    On review, the respondent makes the following arguments related to the charge and specifications:  (1) the ALJ did not use the proper standard to define conduct unbecoming; (2) the ALJ should have analyzed certain specifications

---

[3] Although the ALJ merged these specifications, he noted that there was no error in SSA presenting the 12 separate specifications in the Complaint to present exigencies of proof.  ID at 27.  On review, neither party explicitly challenges the decision to merge these specifications.  To minimize any confusion, we adopt herein the merged specifications.

[4] Because merger and the respondent's intent may be relevant to whether SSA proved the specifications and charge, we modify the initial decision to discuss these issues in our assessment of the charge and specifications, and not the affirmative defenses.  *See, e.g.*, *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

under a falsification standard, which requires proof of intent; and (3) the ALJ erred because he failed to consider the disease model of alcoholism and how the respondent lacked the requisite knowledge and intent because of her alcoholism on the dates in question. PFR File, Tab 9 at 3-8.

¶13    We have considered the respondent's argument that the ALJ did not correctly analyze the conduct unbecoming charge because he did not assess whether her conduct was "improper, unsuitable, or detracting from [her] character or reputation." *Id*. at 5 (quoting *Long*, 113 M.S.P.R. 190, ¶ 42). This argument is not persuasive. The ALJ accurately cited *Long* for the proposition that conduct unbecoming is conduct that violates generally accepted rules of conduct. ID at 9 (citing *Long*, 113 M.S.P.R. 190, ¶ 40). The ALJ also properly relied on the ABA Model Code of Judicial Conduct. *See Long*, 113 M.S.P.R. 190, ¶ 41 (finding that the ABA Model Code is an appropriate guide for evaluating ALJ conduct). The respondent has not persuaded us that the ALJ's omission of the additional language from *Long* prejudiced her in any way. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of the initial decision).

¶14    The respondent also challenges the ALJ's reliance on section 1.6 of the Standards of Conduct contained with the APRs, which described conduct on and off the job. PFR File, Tab 9 at 5; ID at 10. Section 1.6 states, in relevant part, "You are responsible for observing the requirements of courtesy and consideration while dealing with coworkers or serving the public and must conduct yourself with propriety." ID at 10; IAF, Tab 140 at 179. It does not appear that, during the incidents in question or when she entered into the *nolo contendere* pleas, the respondent was "dealing with coworkers" or "serving the public." However, even if the ALJ improperly relied on the APRs or this excerpted language in his analysis of the charge and specifications, the

respondent has not persuaded us that a different outcome is warranted. *Panter*, 22 M.S.P.R. at 282.

¶15     We have also considered the respondent's argument that SSA must prove falsification for specifications 1-3 and 8-9 (involving allegations of false or untruthful statements), and SSA could not prove these specifications because she lacked the requisite knowledge or intent due to her alcoholism. PFR File, Tab 9 at 5-8. This argument relates to an issue of proof. A charge of conduct unbecoming has no specific elements of proof other than the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). By contrast, falsification requires proof that the respondent (1) supplied wrong information and (2) knowingly did so with the intention of defrauding, deceiving, or misleading the agency for her own private material gain. *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶¶ 10, 12 (2014); *see Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002) ("Falsification involves an affirmative misrepresentation, and requires intent to deceive.").

¶16     We are not persuaded that the ALJ should have analyzed specifications 1-3 and 8-9 (or merged specifications 1/2, 3/4, and 8/9) using the falsification standard. The respondent cites to some initial decisions to support her argument, PFR File, Tab 9 at 6, but initial decisions are of no precedential value and cannot be cited or relied on as controlling authority, *Rockwell v. Department of Commerce*, 39 M.S.P.R. 217, 222 (1988); 5 C.F.R. § 1201.113. We have considered the two remaining decisions cited by the respondent, *LaChance v. Merit Systems Protection Board*, 147 F.3d 1367 (Fed. Cir. 1998), and *Boltz v. Social Security Administration*, 111 M.S.P.R. 568, ¶ 16 (2009). PFR File, Tab 9 at 6. Both of these cases stand for the proposition that when an agency uses general charging language, the Board must look to the specifications to determine what conduct the agency is relying on as the basis for its proposed disciplinary action. *LaChance*, 147 F.3d at 1371; *Boltz*, 111 M.S.P.R. 568, ¶ 16. Consistent

with this precedent, we have carefully reviewed the specifications. We find that it was proper to evaluate the charge and specifications as conduct unbecoming.

¶17 We further find that *LaChance* and *Boltz* are distinguishable from the instant matter. *LaChance* did not involve charges of conduct unbecoming and falsification. In *Boltz*, 111 M.S.P.R. 568, ¶¶ 2, 12, each of the three specifications of the conduct unbecoming charge involved allegations of false statements. By contrast, here, there were numerous specifications, including multiple merged specifications, which did not involve any allegations of false or untruthful statements. *See* PFR File, Tab 9 at 8 (acknowledging that only original specifications 1-3 and 8-9 involve allegations of false or untruthful statements). Moreover, in *Botlz*, the agency alleged that Ms. Boltz was "well aware" that her statements were inaccurate, and it rejected Ms. Boltz's explanations as disingenuous, not credible, and disturbing, *Boltz*, 111 M.S.P.R. 568, ¶ 17, but there is no comparable language in the Complaint against the respondent.

¶18 Based on our review of the specifications, SSA's charge is properly written, and should be evaluated, as conduct unbecoming. Although some of the specifications (merged or otherwise) involved allegations of false or untruthful statements, the Board has held that the use of the words "falsified" and "falsely" in the narrative accounts of certain specifications does not mean that the agency was required to prove falsification.[5] *Cross v. Department of the Army*, 89 M.S.P.R. 62, ¶ 9 (2001). For the reasons described herein and in the initial decision, SSA proved the misconduct alleged in all of the specifications, and we find that the respondent's misconduct constitutes conduct that is improper, unsuitable, or detracts from one's character or reputation and violates generally

---

[5] Because we have found that SSA is not required to prove falsification, we need not evaluate the issue of intent. ID at 27-28. However, the issue of the respondent's intent due to alcohol-induced blackouts may be relevant in assessing the reasonableness of SSA's chosen penalty, and we consider this issue in our penalty discussion.

accepted rules of conduct.[6] We therefore agree with the ALJ that SSA proved the charge of conduct unbecoming an ALJ.

<u>We agree with the ALJ that the respondent did not prove her affirmative defenses.</u>

¶19 In the initial decision, the ALJ found that the respondent did not prove her affirmative defenses, including that SSA did not comply with the collective bargaining agreement (CBA), SSA failed to consider her medical conditions in its penalty, and her conduct did not relate to her position as an ALJ. ID at 12-16. The ALJ noted that the respondent raised other claims in her post-hearing brief that were not raised in her Answer, including that SSA did not conduct a sufficient investigation before initiating the Complaint and disability discrimination, but he considered them and found that the respondent did not prove these claims.[7] ID at 17-28.

¶20 On review, the respondent argues that the ALJ improperly analyzed her CBA claim, her disability discrimination claims, and the relationship between the misconduct and her ALJ position. PFR File, Tab 9 at 9-11, 28-37. We address each argument in turn, and find that a different outcome is not warranted.

¶21 Regarding the respondent's claim of a CBA violation, the ALJ found that the respondent did not prove that SSA violated the CBA or otherwise committed harmful procedural error regarding any CBA provision. ID at 13; *see Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991) (explaining that

---

[6] Even if we did not sustain or consider merged specifications 1/2, 3/4, and 8/9, the remaining proven specifications constitute conduct that is improper, unsuitable, or detracts from one's character or reputation. We would find that SSA proved the charge of conduct unbecoming an ALJ on these alternative grounds. *See, e.g.*, *Burroughs v. Department of the Army,* 918 F.2d 170, 172 (Fed. Cir. 1990) (finding that, when more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

[7] Because the ALJ ultimately considered these claims in the initial decision, we need not address any arguments regarding his finding that these claims were not raised in the respondent's Answer.

harmful error under 5 U.S.C. § 7701(c)(2)(A) cannot be presumed; an agency error is harmful only when the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error); 5 C.F.R. § 1201.4(r).  The ALJ alternatively addressed the respondent's claim regarding her *Weingarten* rights. He noted that the respondent had representation during the November 16, 2018 *Weingarten* meeting, SSA determined that another *Weingarten* interview was unnecessary, and there was no authority to support the proposition that a second *Weingarten* interview was required or that SSA violated the CBA in this regard. ID at 13-14.  The ALJ further found that SSA had sufficient evidence to initiate a complaint against the respondent and there was no harmful procedural error on this basis.  ID at 17-20.

¶22      On review, the respondent asserts that SSA's investigation was flawed and failed to comply with the CBA by not allowing her an opportunity—besides the first *Weingarten* interview, when the criminal charges were still pending against her—to present her side of the story.  PFR File, Tab 9 at 30-31.  She asserts that SSA failed to meaningfully investigate the allegations because no officials ever spoke with her, her husband, her doctors, or anyone else who would be favorable to her following the December 2018 incident or after the criminal charges were resolved.  *Id.* at 31-34.  In other words, she asserts that she was not given a meaningful opportunity to explain what happened before SSA sought her removal.  By the respondent's own admission, however, a second *Weingarten* interview was not required.  *Id.* at 33.  The respondent also asserts that SSA made an adverse inference against her due to the invocation of her right against self-incrimination during the *Weingarten* interview.  *Id.* at 31 (citing IAF, Tab 147 at 30; Hearing Transcript (HT) 2 at 236-39; HT 3 at 112-13, 154). However, these citations to the record do not support the assertion that SSA managers made an adverse inference against her.  We have considered the respondent's remaining arguments, but we agree with the ALJ that the respondent

did not prove that SSA violated the CBA related to its investigation or that any such violation constituted harmful procedural error.

¶23    In the initial decision, the ALJ made the following findings regarding the respondent's disability discrimination claims:  (1) she never disclosed to SSA that she suffered from a disability or needed a reasonable accommodation prior to the August 17, 2018 incident; (2) following the August 17, 2018 incident, the respondent never made a request for a reasonable accommodation related to her alcoholism or any other medical issue or alleged disability; (3) she did not prove that she suffered from a disability; (4) the antidiscrimination statutes do not protect an employee from being disciplined for misconduct; and (5) the respondent did not prove her claim of disparate treatment disability discrimination because she did not identify any comparators.  ID at 20-25.

¶24    The respondent does not challenge the ALJ's statement that she did not inform SSA prior to the August 17, 2018 incident that she had a disability or that she needed accommodation.  ID at 21.  However, we agree with the respondent that the ALJ erred when he stated that the respondent never requested an accommodation.  *Id.*  Rather, we construe the respondent's request for extended medical leave following the August 17, 2018 incident as a request for reasonable accommodation.  ID at 6; IAF, Tab 126 at 6, 8, 10-11, 13.  We modify the initial decision in this regard.

¶25    The respondent has not identified on review any other accommodation that she requested that SSA denied or ignored.  For example, the respondent testified that she asked for some of her cases to be reassigned while she was on extended leave and in treatment, and SSA did so.  HT 4 at 202 (testimony of the respondent).  The respondent requested to telework on certain days, and SSA granted this request.  IAF, Tab 147 at 31.  Moreover, the respondent testified that she asked for—and SSA granted—more time to work on certain cases upon her return from extended leave.  HT 3 at 281-84 (testimony of the respondent); HT 4 at 202-03 (testimony of the respondent).

¶26    The respondent also contends that after she was removed from hearings following the December 17, 2018 incident, she asked for an explanation of the types of work that she was allowed to perform. She asserts that this request was "tantamount to another accommodation request,"[8] and she contends that SSA made no attempt to engage in the interactive process regarding this request. PFR File, Tab 9 at 35-36 (citing IAF, Tab 147 at 33; HT 3 at 119-20). Contrary to the respondent's assertion, these citations to the record show that she was advised of the work that she could perform during this time, i.e., "consider file reviews or confer with the [Hearing Office Chief ALJ]." IAF, Tab 147 at 33; HT 3 at 118-20 (testimony of the Chief ALJ). Moreover, she testified that her supervisor was "sympathetic" to her during this period, and he encouraged her to "take the extra time [she] needed to complete tasks." HT 3 at 284-85 (testimony of the respondent). For these reasons, we agree with the ALJ that the respondent did not prove her failure to accommodate claim.

¶27    The respondent also challenges the ALJ's analysis of her disparate treatment disability discrimination claim. In pertinent part, she asserts that the ALJ failed to address evidence that SSA did not impose the same discipline on two ALJs without a disability and did not uniformly apply the same rule to her. PFR File, Tab 9 at 36-37. Contrary to the respondent's assertion on review, the ALJ addressed this evidence, but he found that the other ALJs cited by the respondent were not proper comparators.[9] ID at 23-25. We agree that the ALJs

---

[8] We need not decide if her request for an explanation constituted a reasonable accommodation request under the circumstances. Even if we assume for the purposes of our analysis that the respondent's request for an explanation was a reasonable accommodation request, SSA gave her the requested explanation.

[9] The ALJ cited to *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657 (2010), in his discussion of the respondent's disparate treatment disability discrimination claim, and he noted that even if the ALJs were comparators, SSA demonstrated that sufficient differences existed to explain a difference in sanction. ID at 24-25. However, we find that the ALJ's reliance on *Lewis* is misplaced for two reasons. First, in *Lewis*, 113 M.S.P.R. 657, ¶ 5, the Board discussed disparate treatment in the absence of an

cited by the respondent were not proper comparators because the totality of their misconduct was different than the respondent's misconduct.  ID at 24; *see Adams v. Department of Labor*, 112 M.S.P.R. 288, ¶ 13 (2009) (stating that for employees to be deemed similarly situated for purposes of an affirmative defense of discrimination, they must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the respondent's without differentiating or mitigating circumstances); *see also Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 42 (stating that the standards and methods of proof that apply to Title VII disparate treatment claims also apply to disparate treatment disability discrimination claims).  There are numerous additional specifications in the Complaint against the respondent that we have sustained that were not present in the other ALJ cases that she cites on review.  We therefore find that the other two ALJs are not proper comparators and conclude that the respondent has not proven her claim of disparate treatment disability discrimination.

¶28        Finally, the respondent asserts that the ALJ erred when he rejected her argument that her conduct does not have a sufficient relationship to her ALJ position.  PFR File, Tab 9 at 9; ID at 16.  The ALJ correctly noted that the good cause standard for disciplinary action against an ALJ is not equivalent to the efficiency-of-the-service standard in actions taken pursuant to 5 U.S.C. § 7513, and no nexus analysis was necessary here.  ID at 16 (citing *Long*, 113 M.S.P.R. 190, ¶¶ 45-46).  Rather, having held that SSA proved the conduct unbecoming charge, the ALJ found that there was good cause to discipline the respondent.  ID at 16.

---

allegation of discrimination as part of the penalty analysis, not as part of a disparate treatment affirmative defense.  Second, and more importantly, the Board overruled *Lewis* in *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 9.  Accordingly, we vacate the ALJ's reliance on *Lewis* in this regard.

¶29    On review, the respondent acknowledges that the standards are not equivalent, but she states that the Board looks to the efficiency-of-the-service decisions for guidance in assessing good cause. PFR File, Tab 9 at 9-11. She argues that the ALJ failed to conduct any analysis of whether her off-duty conduct "actually eroded public confidence in the independence, integrity, and impartiality of the judiciary." *Id.* She asserts that there is no evidence that her off-duty conduct "reflect[s] adversely on her honesty, impartiality, temperament or fitness to serve as an ALJ." *Id.* Finally, she contrasts the facts of her case to other ALJ cases. *Id.*

¶30    The respondent's arguments are not persuasive. The ALJ noted in his penalty analysis that the SSA Chief ALJ believed that the respondent's conduct conflicted with making disability determinations and reflected adversely on SSA. ID at 32; *see, e.g.*, HT 3 at 81 (testifying that the way that the respondent "identified her husband to police . . . could lead claimants . . . who are black, or military, veterans, who [have] substance abuse issues . . . [to say] I don't feel that you can be impartial in my case based on what you've done") (testimony of the Chief ALJ). The ALJ also considered that two claimants filed complaints in U.S. district court regarding the incidents and the respondent's arrests and argued that she was not fit to hear their cases as an SSA ALJ. ID at 31; *see* IAF, Tab 135 at 26, 46 (alleging, among other things, that the two incidents together "show that [the respondent] does not have the kind of judicial temperament needed to conduct hearings and issue decisions," and requesting that the respective cases "be remanded to another ALJ who has not been shown to lack integrity and fairness"). We have considered the other ALJ cases cited by the respondent, but none warrant a different outcome.

SSA has demonstrated good cause to remove the respondent from her ALJ position.

¶31    A Board decision finding good cause "on a proposed [petitioner] action . . . against an [ALJ] will authorize the [petitioner] to take a disciplinary action."

*Social Security Administration v. Levinson*, 2023 MSPB 20, ¶ 37; 5 C.F.R. § 1201.140(b). Accordingly, when the Board makes a good cause determination, it authorizes but does not require the petitioner to act. *E.g.*, *Avery*, 120 M.S.P.R. 150, ¶¶ 13-14 (finding good cause under 5 U.S.C. § 7521 and "authoriz[ing]" the petitioner to furlough respondent ALJs); *Long*, 113 M.S.P.R. 190, ¶¶ 42, 55 (finding good cause under 5 U.S.C. § 7521 and "authoriz[ing]" the petitioner to remove the respondent ALJ); *Social Security Administration v. Steverson*, 111 M.S.P.R. 649, ¶¶ 20-21 (2009) (same), *aff'd per curium*, 383 F. App'x 939 (Fed. Cir. 2010) *and overruled on other grounds by Jarboe*, 2023 MSPB 22.

¶32    In original jurisdiction cases such as this one, under 5 U.S.C. § 7521, the Board looks to the factors articulated in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). *Levinson*, 2023 MSPB 20, ¶ 41; *Long*, 113 M.S.P.R. 190, ¶ 47. In *Douglas*, 5 M.S.P.R. at 305-06, the Board articulated a nonexhaustive list of factors relevant to penalty determinations. In pertinent part, the ALJ considered the nature and seriousness of the offense, the prominence of the ALJ position, the effect of the offense on the respondent's ability to perform and the effect on her supervisor's confidence, the consistency of the penalty with those imposed on other employees for the same or similar offenses, the notoriety of the offense, the fact that the respondent was on notice of the rules of conduct, the potential for rehabilitation, and the adequacy of other sanctions to deter the misconduct. ID at 29-36. The ALJ also considered as mitigating factors the absence of any prior disciplinary history, the respondent's lengthy work record, her several medical conditions, her continued rehabilitation efforts, and her good working relationships with several other employees and colleagues. ID at 31, 35. The ALJ ultimately concluded that there was good cause for SSA to remove the respondent.[10] ID at 29-37. We have considered the

---

[10] Notwithstanding that finding, the ALJ noted that SSA "may consider offering [r]espondent a position as an attorney-advisor, as a matter of clemency." ID at 37. The

respondent's numerous arguments on review. PFR File, Tab 9 at 11-28. Although we modify the initial decision to supplement the ALJ's analysis of some of these factors, we agree with the ALJ that SSA has shown good cause to remove the respondent.[11]

¶33     The Board considers first and foremost among the *Douglas* factors the seriousness of the misconduct and its relationship to the employee's position and duties. *Levinson*, 2023 MSPB 20, ¶ 42; *Long*, 113 M.S.P.R. 190, ¶ 48. There is no doubt that conduct unbecoming an ALJ is a serious charge, and the underlying specifications were very serious. We have considered the respondent's argument that, due to her alcohol intoxication on the dates in question, she had no knowledge of and/or lacked intent to engage in such activity. PFR File, Tab 9 at 12-13; *see Douglas*, 5 M.S.P.R. at 305 (explaining that one of the considerations of the *Douglas* factor involving the nature and seriousness of the offense is whether the offense was intentional or technical or inadvertent, was committed maliciously or for gain, or was frequently repeated). We have considered this argument, but it does not change our finding that the sustained misconduct is very serious.

¶34     The respondent also asserts that the ALJ ignored case law that an individual's mental state and medical conditions are relevant in evaluating the seriousness of the misconduct. PFR File, Tab 9 at 13 (citing *Larry v. Department of Justice*, 76 M.S.P.R. 348, 360 (1997), and *Bishopp v. Department of the Air*

---

ALJ explained that offering such a position would provide an opportunity for the respondent to continue her Federal service and address SSA's concerns regarding misconduct and the prominence of the ALJ position. *Id.*

[11] In its response to the respondent's petition for review, SSA raises the possibility that the Board might find that SSA ALJs are inferior officers, and it asserts that the Board should defer to SSA's chosen penalty in this matter. PFR File, Tab 12 at 17 n.4. The respondent does not raise this issue in her petition for review or reply brief. We need not substantively address SSA's argument because we find the proposed removal proper, regardless of any deference to SSA. *See Levinson*, 2023 MSPB 20, ¶ 40 n.7.

*Force*, [75 M.S.P.R. 33](#) (1997)). However, this argument is not persuasive. Importantly, neither Mr. Larry nor Ms. Bishopp were ALJs. Moreover, the Board appears to have considered Ms. Bishopp's mental state as a mitigating factor, not as part of its evaluation of the nature and seriousness of the offense. *See Bishopp*, 75 M.S.P.R. at 40 (noting that when mental impairment plays a part in misconduct, it will be given considerable weight as a mitigating factor). We believe that the better course of action is to consider the respondent's mental state and medical conditions in our assessment of the mitigating factors. *Infra* ¶ 37.

¶35     The respondent also contends that the ALJ ignored the fact that she was only adjudicated guilty of driving under the influence, the ALJ improperly characterized the misconduct as repeated, and merger of the specifications supports a finding that the misconduct was less serious. PFR File, Tab 9 at 13-14. These arguments do not warrant a different outcome. Notably, the ALJ acknowledged that the respondent was only adjudicated guilty of driving under the influence. ID at 7. However, there were other specifications that the ALJ sustained, and we have affirmed, related to the charge of conduct unbecoming, such as providing false or untruthful statements to law enforcement and leaving the scene of an accident. We also discern no error with the ALJ's characterization of the misconduct as repeated because, as the respondent acknowledges, there were two incidents of misconduct that occurred over a 4-month period. PFR File, Tab 9 at 13. Also, the Board has held that the fact that a charge has been merged into another does not mean that the duplicative charge is not sustained or that the misconduct somehow becomes less serious by virtue of the merger. *Shiflett v. Department of Justice*, [98 M.S.P.R. 289](#), ¶ 12 (2005). Consistent with this precedent, we are not persuaded by the respondent's argument that merger of the specifications warrants a less serious penalty. Ultimately, the merged specifications are very serious and relate directly to the respondent's honesty, trustworthiness, and judgment.

¶36        The ALJ also found that the respondent holds a prominent position as an ALJ and has an obligation to avoid the appearance of impropriety.  ID at 30-31; *Long*, [113 M.S.P.R. 190](), ¶ 50.  He noted that some claimants filed complaints in the U.S. district court alleging that the respondent was incapable of rendering decisions; the ALJ concluded that the respondent's conduct did not promote confidence in the administrative judiciary, and her actions could, if left unaddressed, erode public confidence in the judiciary.  ID at 30-31.  We acknowledge that the two claimants were represented by the same representative, and the complaints against the respondent were ultimately unsuccessful.  PFR File, Tab 9 at 15.  Even considering these facts, a different outcome is not warranted on the evaluation of this *Douglas* factor.

¶37        We also discern no error with the ALJ's identification of numerous mitigating factors in this case.  ID at 31, 35.  The parties do not appear to dispute that the respondent suffered from anxiety, post-traumatic stress disorder, and alcoholism or that her alcoholism, in particular, played a part in the August 17, 2018, and December 2, 2018 incidents.  ID at 35.  We supplement the initial decision because evidence that an employee's medical conditions played a part in the charged conduct is ordinarily entitled to considerable weight as a mitigating factor, *Malloy v. U.S. Postal Service*, [578 F.3d 1351](), 1357 (Fed. Cir. 2009); *Bowman v. Small Business Administration*, [122 M.S.P.R. 217](), ¶ 13 (2015), and it is not clear whether the ALJ gave these conditions such weight.  We have therefore given these conditions considerable weight as a mitigating factor.

¶38        The respondent also generically asserts that the ALJ failed to conduct an evaluation of witness credibility pursuant to *Hillen v. Department of the Army*, [35 M.S.P.R. 453](), 458 (1987).  PFR File, Tab 9 at 37.  She explains that the ALJ "completely ignored [her] evidence . . . including testimony by several witnesses that contradicted testimony from the [a]gency." *Id.*  However, she fails to identify a single example when the ALJ "simply deferred" to SSA. *Id.*  In her reply, however, she explains that this issue arose with SSA managers'

"uninformed opinion about various *Douglas* factors," including the respondent's rehabilitation, her ability to perform the duties of an ALJ, the alleged loss of trust in the respondent, disparate treatment, and other inconsistencies between the managers' testimony and their actions after considering the evidence presented by the respondent. PFR File, Tab 15 at 23.

¶39    We are not persuaded by the respondent's argument. The Board will not disturb an adjudicating ALJ's findings when he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987). However, even if we assume for the purposes of our analysis that the ALJ committed some error and we consider the specific penalty factors identified by the respondent, a different outcome is not warranted.

¶40    For example, regarding the consistency of the penalty with those imposed upon other employees for the same or similar offenses, we agree with the ALJ that the other ALJs did not have additional sustained specifications, which support a greater sanction against the respondent. ID at 33; *see Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 14 (stating that the relevant inquiry is whether the agency knowingly and unjustifiably treated employees differently).

¶41    Regarding the effect of the offenses on the respondent's ability to perform her duties and the effect on her supervisor's confidence, the ALJ considered that the respondent continued with her duties after the first arrest and the testimony of her first-line supervisor that he would have allowed her to continue working in the office following the second arrest. ID at 32. The ALJ also noted that the respondent lost the confidence of other SSA supervisors and managers. *Id.* We discern no error with the ALJ's conclusion on this factor. Indeed, a supervisor's opinions are insufficient to overcome SSA's judgment concerning the seriousness of the misconduct and the appropriateness of the penalty. *Edwards v. Department*

*of the Army*, [87 M.S.P.R. 27](#), ¶ 9 (2000), *aff'd sub nom. Rodriguez v. Department of the Army*, 25 F. App'x 848 (Fed. Cir. 2001).

¶42  Finally, regarding the potential for rehabilitation, we agree with the respondent that the ALJ seemed to only focus on SSA's evidence and argument to support his conclusion that she could not be rehabilitated. ID at 34-35. However, the ALJ's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health and Human Services*, [22 M.S.P.R. 129](#), 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). We have considered the respondent's evidence, such as her decision to seek treatment after the August 17, 2018 incident, the promptness with which she informed her supervisors of this incident, her regular updates regarding her treatment and the status of the criminal cases, and her successful completion of a 10-month rehabilitation program. PFR File, Tab 9 at 21-25; IAF, Tab 164 at 44-46. We have also considered the testimony that the respondent's risk of relapse due to alcoholism was "extremely low." HT 6 at 53-54 (testimony of L.W.).

¶43  We have considered the respondent's remaining arguments on review regarding the ALJ's evaluation of the *Douglas* factors. Notwithstanding the mitigating factors that we have considered and the weight which we have accorded to such factors, we find that the serious nature of the sustained misconduct, combined with the prominence of the ALJ position, the respondent's frequent interactions with the public, including vulnerable and minority claimants, and the lack of confidence expressed by SSA managers in the respondent's ability to perform her duties, supports the ALJ's conclusion that SSA has demonstrated good cause to remove the respondent.

## ORDER

¶44  The Board authorizes SSA to remove the respondent for good cause shown, pursuant to [5 U.S.C. § 7521](#). This is the final decision of the Merit Systems

Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[12]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[12] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[13] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

---

[13] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                                    /s/ for
                                                 Jennifer Everling
                                                 Acting Clerk of the Board

Washington, D.C.